UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHI CHEN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. BANK NATIONAL ASSOCIATION, et al.,<br><br>Defendants. | Case No. 16-1109RSM<br><br>ORDER DENYING PLAINTIFF YU'S MOTION FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

This matter comes before the Court on Plaintiff Yu Lu's Motion for Summary Judgment. Dkt. #202. Plaintiff Yu moves for summary judgment in favor of Plaintiffs' one remaining claim against Defendant U.S. Bank, breach of contract, and for the Court to award her $500,000, plus interest, attorneys' fees, and all other costs. *Id*. at 6. No other Plaintiff joins in this Motion. U.S. Bank opposes. Dkt. #231. There has been no request for oral argument. For the reasons stated below, the Court DENIES this Motion.

## II. BACKGROUND

Plaintiffs in this case are Chinese citizens who each invested $500,000 in a mining venture run by Defendants Quartzburg Gold, LP ("Quartzburg") and Idaho State Regional

ORDER DENYING PLAINTIFF YU'S MOTION FOR SUMMARY JUDGMENT - 1

Center, LLC, in order to qualify for the United States' EB-5 immigration investor program. Dkt. #3 at 2–3. At issue in this Motion is the Master Escrow Agreement used by Defendants to structure the receipt and distribution of investment funds. Dkt. #237-1 at 2. Although the original agreement was between Defendants, Plaintiff investors later executed Joinders making each of them an "Investor… to the same extent as if such Person had originally executed this Master Escrow Agreement." *Id*.

Under the Agreement U.S. Bank was the "Escrow Agent." Dkt. #237-1 at 2. The "Background" section states that the money was entering and exiting escrow to permit investors to qualify for EB-5 visas "with the objective of attaining lawful permanent residence in the United States." *Id*. A choice of law provision sets Washington State as the source of governing law. *Id*. at 12.

The parties agreed that U.S. Bank would disburse the investors' funds held in escrow "upon receipt of, and in accordance with a Written Direction." *Id*. at 4. A Written Direction was to be "executed by the Issuer Representative" only. *Id*. "Issuer" refers to Quartzburg, and the Issuer Representative is listed as Debra Riddle, who worked for Quartzburg. *Id*. at 15. To put it another way, this agreement permitted the investor's funds to be disbursed to Quartzburg upon the written request of Quartzburg without any further authorization from the investors.

An example of what was required in a Written Direction is found at Exhibit I to the Agreement. *See id.* at 17. According to this example, Ms. Riddle would send Written Directions to U.S. Bank listing specific Investors and the change to their immigration status that warranted distribution of funds. The form lists five possible reasons why the funds would be disbursed: a) Approval of Investor's I-526 Petition with attached I-797 Notice of Action—funds to be wired to Quartzburg; b) approval of Investor's I-526 Petition with attached

ORDER DENYING PLAINTIFF YU'S MOTION FOR SUMMARY JUDGMENT - 2

Immigrant Visa Application Processing Fee Bill Invoice—funds wired to Quartzburg; c) denial of Investor's I-526 Petition with attached Form I-797 Notice of Action—funds wired back to Investor; d) passage of 18 months with no action or information from USCIS—funds wired back to Investor; e) Quartzburg's approval of Investor's request for return of escrow funds—funds wired back to Investor. *Id*. at 17–18.

Plaintiff Yu filed a Form I-526 petition seeking residence in the United States under the EB-5 program. *See* Dkt. #203 ("Kiendl Decl."), ¶ 6, Exhibit F. She then deposited $500,000 in escrow with U.S. Bank. *See* Kiendl Decl., ¶ 7. Like all of the other Plaintiffs in this case, Yu agreed to be bound by the Master Escrow Agreement by signing a Joinder. *Id*.

USCIS issued a Receipt for her EB-5 petition (Form I-797C, Notice of Action). *See* Kiendl Decl., ¶ 10 and Exhibit H. The "Acknowledgment" does not reflect any approval of the I-526 petition. The Acknowledgment states "THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT." (Emphasis original). *See id*.

Between September 10, 2012, and March 7, 2014, Debra Riddle issued seven Written Directions instructing U.S. Bank to disburse portions of the escrowed funds to Quartzburg. *See* Dkt. #233 ("Fadahunsi Decl."), Exs. C-G; Dkt. #236 ("Kjar Decl."), Exs. B-C. Each was substantially similar and substantially in the form of Exhibit I to Schedule A to the Escrow Agreement. *Id*. Each Written Direction included a list of investors who had received Form I-797s from USCIS and for which Quartzburg was directing disbursement. *Id*. Each attached copies of Form I-797's for the identified investors like the one in the previous paragraph. *Id*. Although these forms did not reflect approval of the investors' I-526 petitions, the Written Directions expressly "direct[ed] release" of the identified escrow funds and expressly

ORDER DENYING PLAINTIFF YU'S MOTION FOR SUMMARY JUDGMENT - 3

represented that the directed "release is in accordance with Exhibit I of Schedule A to the Escrow Agreement" based on the investor's "Receipt of [Form] I-797C from USCIS." *Id*.

According to submitted declarations, U.S. Bank's Escrow Department believed that the Form I-797 Notice of Action forms provided by Quartzburg were the documents that triggered U.S. Bank's contractual duty to release the funds to Quartzburg. *See* Fadahunsi Decl. at ¶¶ 6-36; Kjar Decl. at ¶¶ 7-25. Plaintiff Yu's funds were thus erroneously disbursed by U.S. Bank to Quartzburg in September 2013.

Plaintiff Yu's EB-5 petition was later not approved "due to deficiencies with the underlying EB-5 investment program." Kiendl Decl., ¶ 11. The denial apparently occurred nearly two years after USCIS issued the Form I-797 that was attached to the Written Direction to disburse Yu's funds. *See* Dkt. #231 at 8. Plaintiff Yu has been unable to obtain the return of her funds from Quartzburg, s*ee id*. at 10-11, and thus seeks these funds as damages in this suit.

U.S. Bank has focused on Section 8 of the Agreement as a basis for limiting liability. Section 8 states, in part:

> <u>Liability of Escrow Agent</u>. The Escrow Agent undertakes to perform only such duties as are expressly set forth herein and no duties shall be implied. The Escrow Agent shall have no liability under and no duty to inquire as to the provisions of any agreement other than this Master Escrow Agreement. The Escrow Agent shall not be liable for any action taken or omitted by it in good faith except to the extent that a court of competent jurisdiction determines that the Escrow Agent's gross negligence or willful misconduct was the primary cause of any loss to an Investor or Issuer…. Escrow Agent shall have no implied duties or obligations and shall not be charged with knowledge or notice of any fact or circumstance not specifically set forth herein. Escrow Agent may rely upon any notice, instruction, request or other instrument, not only as to its due execution, validity and effectiveness, but also as to the truth and accuracy of any information contained therein, which Escrow Agent shall believe to be genuine and to have been signed or presented by the person or parties purporting to sign the same. In no event shall Escrow

ORDER DENYING PLAINTIFF YU'S MOTION FOR SUMMARY JUDGMENT - 4

>Agent be liable for incidental, indirect, special, consequential or punitive damages….

Dkt. #237-1 at 7.

### III. DISCUSSION

#### A. Legal Standard for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

#### B. Summary Judgment Analysis

Plaintiff Yu's Motion sets forth the basic elements of a breach of contract claim. Dkt. #202 at 9. She discusses the duties U.S. Bank was to perform under the Escrow Agreement. Her Motion does not discuss Section 8's limitation of liability. She states in a conclusory

fashion that "U.S. Bank's lack of care was grossly negligent" and that "[i]f U.S. Bank can escape all liability due to a co-Defendant's misconduct, then this escrow was illusory for failure of its essential purpose, justifying rescission and damages." *Id*. at 5, 12.

As one would expect, Defendant U.S. Bank relies heavily on Section 8, which purports to limit U.S. Bank's liability to situations of willful misconduct or gross negligence. U.S. Bank argues that under Washington law, "'[w]illful' requires a showing of actual intent to harm" and that "acting volitionally upon a mistake does not show willfulness." Dkt. #231 at 18 (citing *Zellmer v. Zellmer*, 164 Wn.2d 147, 155 n.2, 188 P.3d 497 (2008); *Riley v. Iron Gate Self Storage*, 198 Wn. App. 692, 706-07, 395 P.3d 1059 (2017)). U.S. Bank is correct that Yu "has presented no evidence of willful misconduct whatsoever." *See id*. U.S. Bank cites to *Harper v. Dep't of Corr.*, 192 Wn.2d 328, 340-41, 429 P.3d 1071 (2018) for the elements of gross negligence: "[g]ross negligence most obviously differs from simple negligence in that it requires a greater breach; to prove gross negligence, [the plaintiff] must show that [the defendant] 'substantially' breached its duty by failing to act with even slight care." *Id.* at 19.[1] U.S. Bank argues that "granting summary judgment for a plaintiff in gross negligence cases is almost never appropriate because of the factual nature of the inquiry and the minimal showing of care needed by the defendant to defeat the claim." *Id.* at 20 (citing cases).

On Reply, Plaintiff Yu raises several points that are either irrelevant to the breach of contract question before the Court or which rely on a misunderstanding of obligations of a party opposing summary judgment. For example, she argues that "U.S. Bank's own internal documents and public advertising confirm a far broader role for its professional escrow services

---

[1] The Washington State Supreme Court has also stated that gross negligence is the "failure to exercise slight care, mean[ing] not the total absence of care but care substantially or appreciably less than the quantum of care inhering in ordinary negligence." *Swank v. Valley Christian Sch.*, 188 Wn.2d 663, 684, 398 P.3d 1108, 1120 (2017). The Court in that case went on to state that "[b]ecause [this] standard[] turns on a fine-grained factual analysis, issues of negligence and proximate cause are generally not susceptible to summary judgment." *Id*. at 685.

ORDER DENYING PLAINTIFF YU'S MOTION FOR SUMMARY JUDGMENT - 6

than the minimal duties it now contends for…" Dkt. #243 at 3. Plaintiff Yu does not explain how statements made in advertising would create extra-contractual duties that linger after she signed a Joinder to an Agreement with a limitation of liability. She also argues that U.S. Bank has failed to demonstrate it "worked hard enough," and that "[n]o reasonable jury could find that U.S. Bank's only unique service – protecting Plaintiff's funds from the only other party to the Escrow Agreement – meant, precisely, nothing." *Id*. at 6. These points are best delivered to the ultimate the fact-finder. Plaintiff Yu appears to argue that U.S. Bank has failed to establish summary judgement on this claim, but it is Plaintiff who is moving for such relief, not U.S. Bank. *See id*. at 7.

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. The Court can easily find at this time that Plaintiff Yu has failed to demonstrate that U.S. Bank engaged in willful misconduct or gross negligence. Plaintiff Yu has presented no evidence of *willful* misconduct. There does appear to be evidence of negligence on the record, however the record also arguably contains evidence of a "minimal showing of care." For example, under the Master Escrow Agreement, U.S. Bank was permitted to rely on the "effectiveness" of the materials submitted by Debra Riddle, which included a signed letter stating, erroneously perhaps, that release of the funds was in accordance with the Escrow Agreement based on attached documents. There is not enough here to conclude that the "big mistake" made by U.S. Bank was gross negligence as a matter of law.

The Court notes that many other arguments and genuine disputes of material fact are raised by U.S Bank. *See* Dkt. #231 at 15–26. The Court need not address these other bases for denying this Motion, however the Court is aware that arguments by the parties as to the

enforceability of the Section 8 limitation of liability are raised in a separate pending Motion. *See* Dkt. #205.

C. **Motion to Seal**

"There is a strong presumption of public access to the court's files." LCR 5(g). "Only in rare circumstances should a party file a motion, opposition, or reply under seal." LCR 5(g)(5). A "good cause" showing under Rule 26(c) will suffice to keep sealed records attached to non-dispositive motions. *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006) (internal citations omitted). For dispositive motions, the presumption may be overcome by demonstrating "compelling reasons." *Id.*; *Foltz v. State Farm Mutual Auto. Ins. Co.*, 331 F.3d 1135-36 (9th Cir.2003). Applying the "compelling reasons" standard, the Ninth Circuit has found appropriate the sealing of documents attached to a motion for summary judgment when court records could be used "as sources of business information that might harm a litigant's competitive standing." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016), *cert. denied*, 137 S.Ct. 38 (2016).

Plaintiff Yu moves to seal Exhibits 3 and 4 attached to a declaration filed in support of her Reply brief. Dkt. #241. Defendant U.S. Bank argues that these documents "contain and/or discuss information relating to the internal policies, procedures, or practices of the [Global Corporate Trust Services'] group, which is not publicly available or readily accessible to anyone outside U.S. Bank," and that this information is "proprietary and confidential, and, if released to the public, it has the potential to harm U.S. Bank." Dkt. #247 at 3 (citing Dkt. #248 (Alliegro Decl.), ¶¶ 6–9). No party opposes these documents being filed under seal.

The Court has reviewed the documents in question and the declaration filed in support of maintaining them under seal. U.S. Bank presents credible evidence that the public release of

the information in question has the potential to provide U.S. Bank's competitors with an unfair commercial advantage. Sufficiently compelling reasons have thus been presented to warrant maintaining these exhibits under seal.

## IV. CONCLUSION

Having considered the applicable briefing submitted by the parties and the entire record, the Court hereby finds and ORDERS:

1) Plaintiff Yu's Motion for Summary Judgment, Dkt. #202, is DENIED.

2) Plaintiff Yu's Motion to Seal, Dkt #241, is GRANTED. Dkts. #245 and #246 shall remain under seal.

DATED this 3 day of March 2020.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE