UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHI CHEN, et al., | Case No. 16-1109RSM |
| Plaintiffs, | ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT |
| v. | |
| U.S. BANK NATIONAL ASSOCIATION, et al., | |
| Defendants. | |

## I.  INTRODUCTION

This matter comes before the Court on Defendant U.S. Bank's Motion for Summary Judgment, Dkt. #309, and Plaintiffs' Motion for Partial Summary Judgment, Dkt #316. U.S. Bank moves for summary judgment dismissal of Plaintiffs' claims for inability to prove gross negligence, because certain knowledge is imputed to them by their agents, and based on the doctrines of estoppel, waiver, and laches. *Id.* Plaintiffs oppose this Motion, arguing there are genuine disputes as to material facts. Dkt. #328. Plaintiffs "request that the Court grant Partial Summary Judgment that U.S. Bank's actions are the 'primary cause' of Plaintiffs' loss of funds." Dkt. #316 at 3. U.S. Bank opposes this Motion, also arguing a genuine dispute as to material facts. Dkt. #320 at 16. The Court finds oral argument unnecessary. For the reasons stated below, the Court DENIES both Motions.

ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT - 1

## II.  BACKGROUND

This is not the first time the Court has ruled on summary judgment and the Court will not recite all the facts of this case. The Court will only focus on those facts necessary to resolve these Motions. Many facts presented by the parties in briefing will be relevant to other motions or at trial.

The Court has previously summarized this case as follows:

> Plaintiffs in this case are Chinese citizens who each invested $500,000 in a mining venture run by Defendants Quartzburg Gold, LP ("Quartzburg") and Idaho State Regional Center, LLC, in order to qualify for the United States' EB-5 immigration investor program. Dkt. #3 at 2–3. At issue in this Motion is the Master Escrow Agreement used by Defendants to structure the receipt and distribution of investment funds. Dkt. #237-1 at 2. Although the original agreement was between Defendants, Plaintiff investors later executed Joinders making each of them an "Investor… to the same extent as if such Person had originally executed this Master Escrow Agreement." *Id*.
>
> Under the Agreement U.S. Bank was the "Escrow Agent." Dkt. #237-1 at 2. The "Background" section states that the money was entering and exiting escrow to permit investors to qualify for EB-5 visas "with the objective of attaining lawful permanent residence in the United States." *Id*. A choice of law provision sets Washington State as the source of governing law. *Id*. at 12.
>
> The parties agreed that U.S. Bank would disburse the investors' funds held in escrow "upon receipt of, and in accordance with a Written Direction." *Id*. at 4. A Written Direction was to be "executed by the Issuer Representative" only. *Id*. "Issuer" refers to Quartzburg, and the Issuer Representative is listed as Debra Riddle, who worked for Quartzburg. *Id*. at 15. To put it another way, this agreement permitted the investor's funds to be disbursed to Quartzburg upon the written request of Quartzburg without any further authorization from the investors.
>
> An example of what was required in a Written Direction is found at Exhibit I to the Agreement. *See id.* at 17. According to this example, Ms. Riddle would send Written Directions to U.S. Bank listing specific Investors and the change to their immigration status that warranted distribution of funds. The form lists five possible reasons why the funds would be disbursed: a) Approval of

> Investor's I-526 Petition with attached I-797 Notice of Action—funds to be wired to Quartzburg; b) approval of Investor's I-526 Petition with attached Immigrant Visa Application Processing Fee Bill Invoice—funds wired to Quartzburg; c) denial of Investor's I-526 Petition with attached Form I-797 Notice of Action—funds wired back to Investor; d) passage of 18 months with no action or information from USCIS—funds wired back to Investor; e) Quartzburg's approval of Investor's request for return of escrow funds—funds wired back to Investor. *Id*. at 17–18.

Dkt. #249 at 2–3. Each Plaintiff filed his or her EB-5 forms, deposited $500,000 in escrow with U.S. Bank, and agreed to be bound by the Master Escrow Agreement by signing a joinder. *See id.* at 3. These joinders named attorney Jason Blatt as "Investor Representative" who would "represent [investors] for all purposes in connection with the funds to be deposited" in escrow. Dkt #237-1 at 2. USCIS issued receipts of the EB-5 petitions, however these did not reflect approval and stated at the top, "THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT." *See id*. Quartzburg nevertheless submitted Written Directions instructing U.S. Bank to disburse to it the escrow funds from the investors, with attached copies of receipts with the above language from USCIS. *Id*. These were sent out between September 2012 and March 2014. *See* Dkt. #233 at Exhibits C-G and Dkt. #236 at Exhibits B-C. Although these forms did not reflect approval of the investors' I-526 petitions, the Written Directions "direct[ed] release" of the identified escrow funds and expressly represented that the directed "release is in accordance with Exhibit I of Schedule A to the Escrow Agreement" based on the investor's "Receipt of [Form] I-797C from USCIS." *Id*. U.S. Bank erroneously relied on these Written Directions and released the funds. Plaintiffs' EB-5 petitions were not approved and Plaintiffs have not received refunds from Quartzburg.

     U.S. Bank submits evidence that many or all of the Plaintiffs worked with a company, Westlead, to handle their investment and immigration paperwork. *See* Dkt. #309 at 6 (citing

ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT - 3

Dkt. #311 Ex. 12 (Tao Dep.) at 78:2-79:22, 92:3-20; Ex. 9 (Muroff Dep.) at 57:24-58:16, 82:2-15; Ex. 17; Ex. 16; Ex. 11 (Song Dep.) at 188:3-12). The terms of that arrangement have not been fully presented to the Court, however it appears that Westlead agreed, *e.g.*, to "[t]racking the latest situation in the [I-526] application process and informing [Plaintiffs] in a timely manner." *See* Dkt. #311-22 at 2. It is unclear whether Westlead agreed to track the flow of the investment money through escrow. All or nearly all of Plaintiffs worked with attorney Jason Blatt, as part of the services provided by Westlead. *See* Dkt. #311, Ex. 3 (Blatt Dep.) at 16:17-17:1; 28:9-15. Mr. Blatt was notified in September of 2013 of the disbursements out of escrow and has stated in his deposition that he knew of the disbursements no later than October of that year. *Id.* at 84:18-25, 85:21-24, 86:22-89:2, 90:18-91:25. He did not seek a return of Plaintiffs' funds and apparently used evidence of the disbursements to fight on behalf of Plaintiffs' immigration case before USCIS. Dkt. #311, Exs. 24 and 25. No other person at Westlead demanded that Quartzburg return the investors' funds or notified U.S. Bank of any purported problem at this time.

In November 2014, Westlead met in Taiwan with Defendant Sima Muroff on behalf of Quartzburg and another company working with Plaintiffs, Worldway. The parties signed a confidential "memorandum" confirming their discussion, under which Westlead agreed that Quartzburg had released the funds from escrow and would announce that doing so was consistent with the parties' agreements, and that the funds were being used for Quartzburg's business plan. Dkt. #311-47 at 2. The exact language used was "Regional Center and GP shall provide a statement that releasing Escrow Funds before any I-526 approval is pursuant to Escrow Agreement… before Nov 25, 2014." *Id.* Regional Center and GP refers to Defendants Idaho State Regional Center, LLC and ISR capital, LLC. Later the document states that

ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT - 4

"Regional Center and GP []released the Escrow Funds from Escrow Account without notifying the EB 5 investors…" *Id.* The parties also agreed that investors who desired to withdraw could seek refunds from Quartzburg and Muroff, while the parties also committed to persuading investors not to withdraw.

The instant suit was filed on December 3, 2015. Dkts. #1-2. Plaintiffs allege that U.S. Bank breached the escrow agreement, causing the loss of the $500,000 investments.

U.S. Bank has focused on Section 8 of the Escrow Agreement as a basis for limiting liability. Section 8 states, in part:

> <u>Liability of Escrow Agent</u>. The Escrow Agent undertakes to perform only such duties as are expressly set forth herein and no duties shall be implied. The Escrow Agent shall have no liability under and no duty to inquire as to the provisions of any agreement other than this Master Escrow Agreement. The Escrow Agent shall not be liable for any action taken or omitted by it in good faith except to the extent that a court of competent jurisdiction determines that the Escrow Agent's gross negligence or willful misconduct was the primary cause of any loss to an Investor or Issuer…. Escrow Agent shall have no implied duties or obligations and shall not be charged with knowledge or notice of any fact or circumstance not specifically set forth herein. Escrow Agent may rely upon any notice, instruction, request or other instrument, not only as to its due execution, validity and effectiveness, but also as to the truth and accuracy of any information contained therein, which Escrow Agent shall believe to be genuine and to have been signed or presented by the person or parties purporting to sign the same. In no event shall Escrow Agent be liable for incidental, indirect, special, consequential or punitive damages….

Dkt. #237-1 at 7.

On March 3, 2020, three months before the instant Motion was filed, the Court issued an Order on a summary judgment motion brought by a single Plaintiff, stating in part:

> As one would expect, Defendant U.S. Bank relies heavily on Section 8, which purports to limit U.S. Bank's liability to situations of willful misconduct or gross negligence. U.S. Bank

ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT - 5

>argues that under Washington law, "'[w]illful' requires a showing of actual intent to harm" and that "acting volitionally upon a mistake does not show willfulness." Dkt. #231 at 18 (citing *Zellmer v. Zellmer*, 164 Wn.2d 147, 155 n.2, 188 P.3d 497 (2008); *Riley v. Iron Gate Self Storage*, 198 Wn. App. 692, 706-07, 395 P.3d 1059 (2017)). U.S. Bank is correct that Yu "has presented no evidence of willful misconduct whatsoever." *See id*. U.S. Bank cites to *Harper v. Dep't of Corr.*, 192 Wn.2d 328, 340-41, 429 P.3d 1071 (2018) for the elements of gross negligence: "[g]ross negligence most obviously differs from simple negligence in that it requires a greater breach; to prove gross negligence, [the plaintiff] must show that [the defendant] 'substantially' breached its duty by failing to act with even slight care." *Id.* at 19. U.S. Bank argues that "granting summary judgment for a plaintiff in gross negligence cases is almost never appropriate because of the factual nature of the inquiry and the minimal showing of care needed by the defendant to defeat the claim." *Id.* at 20 (citing cases).

Dkt. #249 at 6 (footnote omitted). In a footnote on that page, the Court stated:

>The Washington State Supreme Court has also stated that gross negligence is the "failure to exercise slight care, mean[ing] not the total absence of care but care substantially or appreciably less than the quantum of care inhering in ordinary negligence." *Swank v. Valley Christian Sch.*, 188 Wn.2d 663, 684, 398 P.3d 1108, 1120 (2017). The Court in that case went on to state that "[b]ecause [this] standard[] turns on a fine-grained factual analysis, **issues of negligence and proximate cause are generally not susceptible to summary judgment**." *Id*. at 685.

*Id.* at 6 n.1 (emphasis added). The Court continued:

>On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. The Court can easily find at this time that Plaintiff Yu has failed to demonstrate that U.S. Bank engaged in willful misconduct or gross negligence. Plaintiff Yu has presented no evidence of willful misconduct. **There does appear to be evidence of negligence on the record, however the record also arguably contains evidence of a "minimal showing of care."** For example, under the Master Escrow Agreement, U.S. Bank was permitted to rely on the "effectiveness" of the materials submitted by Debra Riddle, which included a signed letter stating, erroneously perhaps, that release of the funds was in accordance with the Escrow Agreement based on attached documents. There is not enough here

ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT - 6

> to conclude that the "big mistake" made by U.S. Bank was gross negligence as a matter of law.
>
> The Court notes that many other arguments **and genuine disputes of material fact** are raised by U.S Bank. *See* Dkt. #231 at 15–26. The Court need not address these other bases for denying this Motion, however the Court is aware that arguments by the parties as to the enforceability of the Section 8 limitation of liability are raised in a separate pending Motion. *See* Dkt. #205.

*Id*. at 7–8 (emphasis added).

### III.   DISCUSSION

**A. Legal Standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT - 7

### B. U.S. Bank's Motion

#### a. Plaintiffs' Claims of Negligence

U.S. Bank has previously argued that granting summary judgment for a plaintiff in a gross negligence case is inappropriate because of the essentially factual inquiry of such a case. Washington case law, cited above, states that issues of negligence and proximate cause are generally not susceptible to summary judgment in a gross negligence case. The Court has previously found that evidence exists in this case that tends to support a finding of negligence *and* evidence exists that tends to support a finding of slight care. Even before reviewing the instant briefing, the Court has essentially been convinced that summary judgment is inappropriate for any party.

Both parties now raise tangential arguments, attempting to litigate the issue of the applicable standard of care and to address affirmative defenses. However, if there are questions of material fact precluding summary judgment, this Motion must be denied and many of the remaining issues can be resolved separately. In their Opposition, Plaintiffs contend:

> Even if the exculpatory language is enforceable (and Plaintiffs contend it is not), there are several disputes about material facts in this case precluding a ruling on summary judgment that U.S. Bank was not grossly negligent. Questions of negligence are ordinarily reserved for the trier of fact. *See, e.g. Graham v. Concord Construction, Inc.*, 100 Wash.App. 851, 999 P.2d 1264 (Div. 3 2000) (negligence in performance of contract).

Dkt. # 328 at 9.

The Court has reviewed the facts highlighted by Plaintiffs and agrees that a genuine dispute as to material fact precludes summary judgment. This finding is true regardless of the applicable standard of care—negligence or gross negligence—which is the subject of a separate Motion. Specifically, Plaintiffs point to the requirement in the Escrow Agreement that the

ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT - 8

funds be disbursed only after evidence of I-526 petition approval had been received in addition to receiving a Written Direction, or a "substantially similar" document. *Id*. at 9–10. The Escrow Agreement requires receipt of a Written Instruction conforming exactly to Exhibit I, and Exhibit I requires a Written Direction with an attachment "evidencing Investor's I-526 petition approval." Dkt. #237-1 at 17. Viewing the Escrow Agreement in the light most favorable to the non-moving parties, the Court cannot conclude that U.S. Bank did not agree to actually examine attachments to Written Directions to see if they evidenced I-526 approval rather than taking the disbursement-receiver's word for it. The Court cannot rule as a matter of law that "slight care" did not include reading and identifying this document. As to this issue there remain material questions of fact, or questions of law entangled with factual questions best left to the jury. Given this, Plaintiffs' claims cannot be dismissed on summary judgment.

### b. Affirmative Defenses of Estoppel, Waiver, and Laches

Equitable estoppel is an affirmative defense which may apply where an admission, statement, or act has been detrimentally relied on by another party. *Campbell v. Dep't of Soc. & Health Servs.*, 150 Wn.2d 881, 902, 83 P.3d 999 (2004). "The principle of equitable estoppel is based upon the reasoning that a party should be held to a representation made or position assumed where inequitable consequences would otherwise result to another party who has justifiably and in good faith relied thereon." *Wilson v. Westinghouse Elec. Corp.*, 85 Wn.2d 78, 81, 530 P.2d 298 (1975). The party asserting this defense must prove the following elements by clear, cogent, and convincing evidence: (1) a party's admission, statement, or act which is inconsistent with its later claim; (2) reasonable reliance by another party on that admission, statement, or act; and (3) injury to the relying party if the first party is permitted to repudiate or contradict the earlier statement or action. *Campbell*, 150 Wn.2d at 902. Reliance

ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT - 9

is justified only when the party claiming estoppel lacked knowledge of the true facts and had no convenient and available means to discover them. *Patterson v. Horton*, 84 Wn. App. 531, 544, 929 P.2d 1125 (1997). Where both parties can determine the law and have knowledge of the underlying facts, estoppel cannot be invoked. *Lybbert v. Grant County*, 141 Wn.2d 29, 35, 1 P.3d 1124 (2000).

Waiver is defined as the intentional and voluntary relinquishment of a known right. *Bowman v. Webster*, 44 Wn.2d 667, 669, 269 P.2d 960 (1954). Importantly, the person against whom waiver is claimed must have intended to permanently relinquish the right, and his or her conduct must be inconsistent with any other intent. *Bill McCurley Chevrolet, Inc. v. Rutz*, 61 Wn. App. 53, 57, 808 P.2d 1167 (1991). A waiver is unilateral and, unlike estoppel, does not require reliance. *Bowman*, 44 Wn.2d at 670 (quoting *Kessinger v. Anderson*, 31 Wn.2d 157, 168-69, 196 P.2d 289 (1948)). A waiver may be express or implied. *Id*. at 669. To constitute an implied waiver, there must exist unequivocal acts or conduct evidencing an intent to waive; intent may not be inferred from doubtful or ambiguous facts. *Cent. Wash. Bank v. Mendelson-Zeller,Inc.*, 113 Wn.2d 346, 354, 779 P.2d 697 (1989). Silence alone does not constitute an implied waiver unless there is an obligation to speak. *Voelker v. Joseph*, 62 Wn.2d 429, 435, 383 P.2d 301 (1963).

"Laches is an implied waiver arising from knowledge of existing conditions and acquiescence in them." *Buell v. City of Bremerton*, 80 Wn.2d 518, 522, 495 P.2d 1358 (1972). The elements of laches are: (1) knowledge or a reasonable opportunity to discover on the part of a potential plaintiff that he or she has a cause of action against a defendant; (2) the plaintiff's unreasonable delay in commencing that cause of action; and (3) damage to the defendant resulting from the unreasonable delay. *Id*. The application of laches requires a close

ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT - 10

evaluation of all the facts in a case and is "seldom susceptible of resolution by summary judgment." *Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1083 (9th Cir. 2000) (per curiam).

U.S. Bank moves for summary judgment on its affirmative defenses of estoppel, waiver and laches. U.S. Bank's argument rests on the knowledge and actions of Plaintiffs' purported agents. For example, U.S. Bank argues:

- "The conduct of Plaintiffs' agents at the time of Quartzburg's directions to disburse funds from escrow is inconsistent with Plaintiffs' later assertion of claims against U.S. Bank." Dkt. #309 at 23.

- "…by neglecting or choosing at the time not to assert that the disbursements were premature, or otherwise to demand compliance with what they now claim to be the requirements of the Escrow Agreement, Plaintiffs (through their agents) waived their right to do so now." *Id*. at 25.

- "After being paid $6,000 to provide a limited service, which it provided in good faith, U.S. Bank was then belatedly sued for tens of millions of dollars in 'damages' consisting of money spent by Quartzburg with the acquiescence of Plaintiffs' agents. These are the very type of inequitable circumstances that the doctrine of laches is designed to prevent." *Id*. at 26.

U.S. Bank believes Plaintiffs should be held responsible for the above knowledge, actions, and omissions of their agents Jason Blatt, Westlead, and perhaps other agents. *Id*. at 20–21. The Court has no reason to doubt that Mr. Blatt and others acted as agents at some point for Plaintiffs. However, to impute their knowledge of the disbursements and subsequent actions/omissions to Plaintiffs, the Court is being asked to find as a matter of law that the

ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT - 11

responsibility to "demand compliance" or somehow get the money back into escrow was within the scope of the agency relationship.

The Court agrees with Plaintiffs that there are genuine issues of material fact precluding summary judgment regarding "Plaintiffs' agents' interactions with U.S. Bank, whether Plaintiffs' agents relied on U.S. Bank themselves, and whether Plaintiffs had any intent to rely on the agents, and whether Plaintiffs suffered prejudice as a result of their agents' actions." Dkt. #328 at 12. The intent and knowledge of the Plaintiffs and their agents at different points in time is something that will need to be ascertained in a courtroom. Even if the Court could answer these questions now, it is not clear to what extent U.S. Bank relied on the omission of Plaintiffs' agents, or that Plaintiffs should be equitably barred from bringing suit a year or two after their agents realized the funds were erroneously disbursed while simultaneously trying to fight for Plaintiffs' immigration status to be approved. The Court can evaluate equitable considerations at or after trial. In sum, these affirmative defenses are not suitable for resolution by summary judgment.

**C. Plaintiffs' Motion for Partial Summary Judgment on Causation**

Plaintiffs argue that U.S. Bank was the "primary cause" of their losses and seek a Court order stating as much prior to trial. Such is necessary for their breach of contract claim due to limitation of liability in Section 8 of the Escrow Agreement. Plaintiffs maintain that finding U.S. Bank to be the primary cause is "a matter of common sense," a "matter of plain language," and "a matter of fundamental fairness." Dkt. #316 at 2–3. In one and a half pages of facts, Plaintiffs focus solely on the actions of U.S. Bank, and argue that "[t]here are no genuine issues of material fact surrounding the interpretation of this contractual provision…" *Id.* at 3.

As previously stated, issues of negligence and proximate cause are generally not susceptible to summary judgment in a gross negligence case. In its Response, U.S. Bank cites to several more cases indicating that causation in a negligence case is typically a question for the jury. Dkt. #320 at 16–17 (citing *N.L. v. Bethel Sch. Dist.*, 186 Wn.2d 422, 436-39, 378 P.3d 162 (2016) (causation is "normally a question for the jury"); *Schnall v. AT&T Wireless Servs., Inc.*, 171 Wn.2d 260, 279-80, 259 P.3d 129 (2011); *Graham v. Pub. Employees Mut. Ins. Co.*, 98 Wn.2d 533, 538-39, 656 P.2d 1077 (1983) ("As a general rule, the question of proximate cause is for the jury."); *Brust v. Newton*, 70 Wn. App. 286, 292, 852 P.2d 1092 (1994)). U.S. Bank summarizes its position thusly:

> While Plaintiffs assert that the cause of their loss was U.S. Bank, the facts show otherwise. In fact, Plaintiffs would not have suffered the alleged loss if, for example: (1) Plaintiffs' agents had not misled them into investing in Quartzburg in the first place; (2) Quartzburg had not instructed U.S. Bank to release the funds from escrow in a way now alleged to have been premature and deceptive; (3) Plaintiffs' agents and counsel had made a different decision when they learned of the disbursements, and stopped the disbursements and Quartzburg's expenditures of funds; (4) Quartzburg had simply retained the funds in its own bank account while waiting to see if USCIS would approve the project, rather than spending the funds on speculative mining ventures before approval; or (5) Quartzburg's mining ventures had been even moderately successful, such that there would be additional funds available for investors. What the evidence shows is a chain of events, almost all involving parties other than U.S. Bank, which resulted in Plaintiffs' investment funds being spent on unsuccessful mining operations, from which they have not received a return. At most, U.S. Bank's good faith conduct could be considered one of several intermediate links in the causal chain, but not a proximate cause and certainly not "the primary cause."

Dkt. #320 at 17–18.

The Court finds there is clearly a genuine dispute as to material facts precluding summary judgment on this issue for the reasons stated by U.S. Bank. The Court is not being

ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT - 13

asked to merely interpret a contractual provision, as framed by Plaintiffs. The Court is being asked to weigh the actions of U.S. Bank against the actions of the many other players in this case so as to determine proximate cause. This is an intensely factual inquiry that will be left for the jury. Accordingly, this Motion must be denied.

### IV.   CONCLUSION

Having considered the applicable briefing submitted by the parties and the entire record, the Court hereby finds and ORDERS:

1) Defendant U.S. Bank's Motion for Summary Judgment, Dkt. #309, is DENIED.

2) In ruling on this Motion, the Court did not rely on the sealed exhibit at Dkt. #327. The Court therefore finds that the issue of sealing that document is moot and it will accordingly remain sealed. Plaintiffs' Motion to Seal, Dkt. #325, is DENIED AS MOOT. The Clerk is directed to keep Dkt. #327 under seal.

3) Plaintiffs' Motion for Partial Summary Judgment, Dkt. #316, is DENIED.

DATED this 18th day of November, 2020.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE