UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHI CHEN, et al., | Case No. C16-1109RSM |
| Plaintiffs, | ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: EXCULPATORY CLAUSE |
| v. | |
| U.S. BANK NATIONAL ASSOCIATION, et al., | |
| Defendants. | |

## I. INTRODUCTION

This matter comes before the Court on Plaintiffs' Motion for Partial Summary Judgment re: Unenforceability of Exculpatory Clause. Dkt. #285. Plaintiffs move the Court to rule as a matter of law that a clause in the Master Escrow Agreement is unenforceable under two different legal theories; this clause limits U.S. Bank's liability to situations where its gross negligence is the primary cause of investor's loss. U.S. Bank opposes. Dkt. #305. There has been no request for oral argument. For the reasons stated below, the Court GRANTS IN PART this Motion.

## II. BACKGROUND

The Court need not recite all the possible background facts to rule on this motion for partial summary judgment.

ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 1

Dkt. #249 at 2–3. Each Plaintiff filed his or her EB-5 forms, deposited $500,000 in escrow with U.S. Bank, and agreed to be bound by the Master Escrow Agreement by signing a joinder. *See id.* at 3. USCIS issued receipts of the EB-5 petitions, however these did not reflect approval and stated at the top, "THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT." *See id*. Quartzburg nevertheless submitted Written Directions instructing U.S. Bank to disburse to it the escrow funds from the investors, with attached copies of receipts with the above language from USCIS. *Id*. U.S. Bank erroneously relied on these Written Directions and released the funds. Plaintiffs' EB-5 petitions were not approved and Plaintiffs have not received refunds from Quartzburg.

The instant suit was filed on December 3, 2015. Dkts. #1-2. Plaintiffs allege that U.S. Bank breached the escrow agreement, causing the loss of the $500,000 investments.

U.S. Bank has focused on Section 8 of the Escrow Agreement as a basis for limiting liability. Section 8 states, in part:

> <u>Liability of Escrow Agent</u>. The Escrow Agent undertakes to perform only such duties as are expressly set forth herein and no duties shall be implied. The Escrow Agent shall have no liability under and no duty to inquire as to the provisions of any agreement other than this Master Escrow Agreement. The Escrow Agent shall not be liable for any action taken or omitted by it in good faith except to the extent that a court of competent jurisdiction determines that the Escrow Agent's gross negligence or willful misconduct was the primary cause of any loss to an Investor or Issuer…. Escrow Agent shall have no implied duties or obligations and shall not be charged with knowledge or notice of any fact or circumstance not specifically set forth herein. Escrow Agent may rely upon any notice, instruction, request or other instrument, not only as to its due execution, validity and effectiveness, but also as to the truth and accuracy of any information contained therein, which Escrow Agent shall believe to be genuine and to have been signed or presented by the person or parties purporting to sign the same. In no event shall Escrow Agent be liable for incidental, indirect, special, consequential or punitive damages….

ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 3

Dkt. #237-1 at 7.

On March 3, 2020, the Court issued an Order on a summary judgment motion brought by a single Plaintiff, stating in part:

> As one would expect, Defendant U.S. Bank relies heavily on Section 8, which purports to limit U.S. Bank's liability to situations of willful misconduct or gross negligence. U.S. Bank argues that under Washington law, "'[w]illful' requires a showing of actual intent to harm" and that "acting volitionally upon a mistake does not show willfulness." Dkt. #231 at 18 (citing *Zellmer v. Zellmer*, 164 Wn.2d 147, 155 n.2, 188 P.3d 497 (2008); *Riley v. Iron Gate Self Storage*, 198 Wn. App. 692, 706-07, 395 P.3d 1059 (2017)). U.S. Bank is correct that Yu "has presented no evidence of willful misconduct whatsoever." *See id*. U.S. Bank cites to *Harper v. Dep't of Corr.*, 192 Wn.2d 328, 340-41, 429 P.3d 1071 (2018) for the elements of gross negligence: "[g]ross negligence most obviously differs from simple negligence in that it requires a greater breach; to prove gross negligence, [the plaintiff] must show that [the defendant] 'substantially' breached its duty by failing to act with even slight care." *Id.* at 19.

Dkt. #249 at 6 (footnote omitted). In a footnote on that page, the Court stated in part:

> The Washington State Supreme Court has also stated that gross negligence is the "failure to exercise slight care, mean[ing] not the total absence of care but care substantially or appreciably less than the quantum of care inhering in ordinary negligence." *Swank v. Valley Christian Sch.*, 188 Wn.2d 663, 684, 398 P.3d 1108, 1120 (2017).

*Id.* at 6 n.1.

Plaintiffs now moves "for an order that Section 8 is unenforceable under Washington law and Washington State public policy to the extent it varies U.S. Bank's duty of ordinary care or limits Plaintiffs' damages caused by U.S. Bank's ordinary negligence." Dkt. #285 at 5.

### III.   DISCUSSION

**A. Legal Standard for Summary Judgment**

ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 4

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**B. Analysis**

**1. UCC Article 4**

Washington's Uniform Commercial Code Article 4 ("Bank Deposits and Collections") limits the extent to which banks can avoid liability for ordinary negligence. Specifically, Section 4-103(a) of Washington's UCC provides:

> The effect of the provisions of this Article may be varied by agreement, but the parties to the agreement cannot disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure. However, the parties may determine by agreement the

ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 5

>   standards by which the bank's responsibility is to be measured if those standards are not manifestly unreasonable.

RCW 62A.4-103(a). RCW 62A.4-105 defines "bank" as "a person engaged in the business of banking, including a savings bank, savings and loan association, credit union, or trust company." The business of banking is not further defined.

Plaintiffs maintain that the Master Escrow Agreement's exculpatory clause above is invalid under RCW 62A.4-103(a) because it attempts to disclaim U.S. Bank's responsibility for a failure to exercise ordinary care by limiting liability to situations where a court finds gross negligence or willful misconduct. Dkt. #285 at 6–8.

U.S. Bank argues that UCC Article 4 has no relevance to this case because it is entitled "Bank Deposits and Collections" and does not deal with escrow. Dkt. #305 at 12–13. U.S. Bank argues that escrow services are not part of the business of banking, *id.* at 13–14, and that banks can perform non-banking functions that fall outside of banking regulations, *id.* at 14–15.

Neither party cites directly on-point Washington law. The Court has reviewed the out-of-state cases cited by the parties and generally agrees with U.S. Bank's position. Given the undisputed facts, Plaintiffs have failed to convince the Court that U.S. Bank was engaged in the business of banking when it offered the escrow services at issue. The dispute in this case deals with U.S. Bank's release of funds from escrow and the terms of the Escrow Agreement rather than the actions U.S. Bank took depositing the escrow money in a U.S. Bank account. Accordingly, Uniform Commercial Code Article 4 does not invalidate the Master Escrow Agreement's exculpatory clause.

2. **Violation of Public Policy**

Plaintiffs also argue that the exculpatory clause is void as against public policy. Dkt. #285 at 8–15 (citing *Wagenblast v. Odessa School District No. 105-157-166J*, 110 Wn.2d 845,

ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 6

851-56, 758 P.2d 968 (1988); *Tunkl v. Regents of Univ. of Cal.*, 60 Cal. 2d 92, 383 P.2d 441 (1963)). The parties agree that, under Washington law, an exculpatory clause may be voided by a Court if the underlying transaction displays some or all of the following characteristics:

> [1] It concerns a business of a type generally thought suitable for public regulation. [2] The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public. [3] The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards. [4] As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services. [5] In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence. [6] Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents.

*Wagenblast*, 110 Wn.2d at 851-52 (quoting *Tunkl*, 60 Cal. 2d at 98-101). "[T]he more of the foregoing six characteristics that appear in a given exculpatory agreement case, the more likely the agreement is to be declared invalid on public policy grounds." *Id*. at 852.

In *Wagenblast*, the Court found an exculpatory clause in violation of public policy in the context of releases for public school interscholastic sports. *Id*. at 856. There is no similar Washington case addressing exculpatory clauses in escrow agreements. Defendants cite to cases where Washington Courts have applied *Wagenblast* to hold an exculpatory clause invalid in the context of medical research involving human subjects, *Vodopest v. MacGregor*, 128 Wn.2d 840, 913 P.2d 779 (1996) and pre-employment physical examinations, *Eelbode v. Chec Med. Ctrs.*, Inc., 97 Wn. App. 462, 984 P.2d 436 (1999), but not in the context of health clubs, *Shields v. Sta-Fit, Inc.*, 79 Wn. App. 584, 903 P.2d 525 (1995).

ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 7

Both parties have pointed to out-of-state escrow exculpatory clause cases in an effort to aid the Court. Plaintiffs cite to *Akin v. Business Title Corp.*, 264 Cal. App. 2d 153, 70 Cal. Rptr. 287 (Ct. App. 1968). In *Akin*, the California Court of Appeal applied the *Tunkl* factors to invalidate an exculpatory clause shielding an escrow agent from liability except in cases of "gross negligence or willful misconduct." 264 Cal. App. at 155. Under California law the exculpatory clause at issue in this case would apparently be void. U.S. Bank cites to cases from Illinois, New Mexico, and elsewhere reaching the opposite conclusion. Dkt #305 at 24 – 25 (citing, e.g., *Home Healthcare of Ill., Inc. v. Jesk*, 112 N.E.3d 594, 603 (Ill. App. 2017); *Lynch v. Santa Fe Nat'l Bank*, 97 N.M. 554, 627 P.2d 1247 (1981)). Many of the *Tunkl* characteristics were not present in those cases (nor in *Shields*, *supra*). Given that the controlling Washington case cites directly to the California Supreme Court, the Court is more persuaded by the analysis in *Akin* than the cases cited by U.S. Bank. U.S. Bank's opposition does not even mention *Akin*.

U.S. Bank cite to *Shields, supra* for the proposition that *Wagenblast* can only be applied in cases involving "essential public services." Dkt. #305 at 4. *Shields* stated:

> A common thread runs through those cases in which exculpatory agreements have been found to be void as against public policy. That common thread is they are all essential public services-- hospitals, housing, public utilities, and public education.
>
> Health clubs are a good idea and no doubt contribute to the health of the individual participants and the community at large. But ultimately they are not essential to the welfare of the state or its citizens. And any analogy to schools, hospitals, housing (public or private) and public utilities therefore fails. Health clubs do not provide essential services.

79 Wn. App. at 589. It is not clear to the Court, however, that *Shields* modifies the holding of *Wagenblast*, rather it seems to be merely commenting on what has satisfied the test in the past.

ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 8

It does not hold that the "service of great importance to the public" characteristic *must* be present or is to be weighed more heavily that the other characteristics.

The Court will step through the six characteristics above. The Court finds that escrow businesses are generally thought suitable for public regulation in Washington as they are subject to the Escrow Agent Registration Act, RCW Chapter 18.44, and WAC 208-680. There is no dispute that U.S. Bank holds itself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards. The undisputed facts in the record indicate that, in the economic setting of the transaction, U.S. Bank possessed a decisive advantage of bargaining strength against the Plaintiffs as investors, who were outsiders to the negotiations. U.S. Bank pre-negotiated the terms of the escrow agreement with the receiving party, forcing investors to sign a joinder if they wanted to invest. Characteristics five and six are not seriously disputed by U.S. Bank, as the investors were given a standardized adhesion contract of exculpation with no provision to pay additional reasonable fees and obtain protection against negligence, and the very nature of escrow placed the property of the purchaser under the control of the seller, subject to the risk of carelessness by the seller or his agents. The investors were essentially members of the public in that they were not known to U.S. Bank at the time the Escrow Agreement was drafted.

The Court thus finds that five of the six characteristics are met. The characteristic at issue is whether the escrow services were of great importance to the public. The Court is persuaded by the logic of *Akin*, which found that the escrow company at issue performed an important public service, and that "[a]lthough it is possible for a party involved in a real estate transaction to get another escrow agent, or to not use the standard escrow procedure, it is often a matter of 'practical necessity' for some members of the public to use the designated escrow

agent." 264 Cal. App. 2d at 157.  Here, U.S. Bank attempts to keep the Court focused on the peculiar nature of the transaction at issue but fails to explain why its escrow services are not of great importance to the public generally.  Instead, U.S Bank flirts with *ipse dixit*.  *See* Dkt. #305 at 21 ("Plaintiffs have presented no evidence that the commercial escrow services provided here are of great importance to the public or are a matter of practical necessity for some members of the public (and they are not).").  Any individual escrow transaction can be made to look private in nature.  However, this transaction involved hundreds of investors with no obvious connection to U.S. Bank being asked to limit U.S. Bank's liability.  And, elsewhere in briefing, U.S. Bank has argued that this kind of exculpatory clause is the industry standard rather than some special provision provided only in commercial escrow services for EB-5 investments with Chinese investors.  *See* Dkt. #305 at 3 ("…the industry-standard limitation of liability provision in the Master Escrow Agreement…"); Dkt. #305 at 7 (citing Dkt. #235 at ¶ 16 ("limitation of liability provisions like those to which Plaintiffs agreed are typical in the industry")); Dkt. #305 at 19 ("Such a ruling would upend an entire industry, in which limitations of liability like the one at issue here are standard.").  The Court is inclined to look at the bigger picture in answering this question.  Given all of the above, the Court now finds that the escrow services provided by U.S. Bank here are of great importance to the public and involve an essential public service for some members of the public.  This final characteristic is satisfied.

Given the above law and analysis, the Court finds that the exculpatory clause in the Master Escrow Agreement is void as against public policy to the extent it purports to exculpate U.S. Bank from liability for ordinary negligence.  The Court notes that this ruling does not

ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 10

affect the exculpatory clause's limitation of liability to where it was the "primary cause of any loss."

### IV.   CONCLUSION

Having considered the applicable briefing submitted by the parties and the entire record, the Court hereby finds and ORDERS that Plaintiffs' Motion for Partial Summary Judgment re: Unenforceability of Exculpatory Clause, Dkt. #285, is GRANTED IN PART as set forth above. The exculpatory clause in the Master Escrow Agreement at issue in this case is void as against public policy to the extent it purports to exculpate U.S. Bank from liability for ordinary negligence.

DATED this 14th day of December, 2020.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE